SUPREME COURT. Albany General Term, September, 1853.
*Harris, Watson* and *Wright,* Justices.

JOHN SKIFF pl'ff in error *vs.* THE PEOPLE def'ts in error.

In an indictment for obtaining property by false pretences, it is sufficient to allege that the property was delivered to and obtained by the defendant by means of the false pretences particularly stated and negatived, without setting forth whether the property was so obtained by a sale or bailment or otherwise: and on the trial, under such an indictment, it is competent to prove in what manner the property was obtained, whether by sale, or bailment, or in any other way.

Where, in such a case, the indictment charged the pretence of owning two pieces of land, in the town of Easton in the county of Washington, designating them as the "Home farm," and the "Van Schaack farm," the description was held to be sufficiently definite.

Where the property was obtained on credit, and the person parting with the property was to receive a note payable at a bank, on which he could get the money, it was held to be competent for the public prosecutor to prove that the note was not paid, though the fact that the note was not paid, was not alleged in the indictment.

It is not necessary to negative all the pretences in an indictment for such an offence, nor to prove all that are negatived to be false.

Whether the prosecutor used ordinary prudence and diligence, in inquiring into the truth of the pretences, and whether the pretences were sufficient to deceive, are questions of fact for the jury.

Where it appeared that the false pretences were made, and the property obtained by them was delivered in the county of Washington, that was held to be the proper county for the trial of the offence, though it appeared that by agreement of the parties the note given for the property was not made and delivered till a subsequent time and in a different county.

Error to the Washington county Sessions. The indictment alleged that in September, 1850, at the town of Easton, in the county of Washington, Skiff, with the intent to cheat and defraud one Samuel Hale, did falsely pretend and represent to Hale that he was the owner and possessor of two pieces of land in Easton, (afterwards designated as the Home farm and the Van Schaack farm,) 2000 bushels of grain, 160 head of cattle, and other property; that the land and personal property was unincumbered, and that he was able to pay his debts, and had always paid his

debts when due; that Skiff did then and there show to Hale certain real and personal property, viz: 2000 bushels of grain, eighty head of cattle, and two pieces of land, and falsely pretended and represented to Hale, that he owned and possessed such real and personal property thus shown; that the real and personal property so shown was unincumbered, and that he did not owe for the Home farm or place, and that the Van Schaack farm was about paid for, and that his business of buying and selling cattle was profitable, and he was making money out of it; that Hale believing the false pretences and representations made as aforesaid by Skiff, and being deceived thereby, was induced by reason of them, to deliver, and did then and there deliver to Skiff, thirty-nine head of cattle, of the value of $600, the property of Hale, and Skiff designedly received and obtained the cattle by means of the false pretences and representations as aforesaid, and with the intent designedly to cheat and defraud Hale of the cattle. The indictment then proceeds to negative the pretences, averring knowledge by Skiff of the falsity of such pretences and representations, and concludes as follows: "And the jurors aforesaid do say that the said John Skiff, by means of the false pretences aforesaid, at the town and county aforesaid, did feloniously, unlawfully, falsely, knowingly and designedly receive and obtain from Hale, of the proper moneys, valuable things, goods, chattels, personal property and effects of the said Hale, with intent feloniously to cheat and defraud the said Hale of the same."

To this indictment Skiff interposed the plea of not guilty, and at a Court of Sessions held in July, 1852, the cause came on for trial.

*Samuel Hale* was called and sworn as a witness, on behalf of the people. He testified that in September, 1850, he owned thirty-nine head of cattle, and drove them to Easton Corners, when he met Skiff, whom he had known previously. He told Skiff that he had thirty-nine head of cattle with him; when Skiff informed him that he wanted to buy some cattle.

Here Skiff's counsel objected to the showing of any bargain or sale of the cattle on the grounds, 1st, That no bargain

and sale were alleged in the indictment. 2d, That the property and its location were insufficiently described in the indictment to admit of any proof thereof. The objection was overruled by the court and the defendant excepted.

The witness then testified, in substance, that at Skiff's solicitation, he got into his carriage and rode with him. Skiff spoke to the witness of a place he had bought of Van Schaack two or three years before, and the improvements he was and had been making; he showed the new fences he had made and told the witness the manner in which he had cultivated the land, and about his crops. He remarked, " what a fine chance the grass would give the young cattle you are driving, and I have a great deal such and better on the home farm." Skiff pointed in the direction of the cattle on the Van Schaack farm and in answer to the inquiry of the witness replied that he had over 100 head. As the witness got into the wagon to return he praised Skiff's improvements, and said he must be doing well. Skiff replied that he was doing pretty well. Witness asked Skiff how long he had had the farm? He told. Witness then said, you have got it pretty much paid for. He replied, yes. Skiff showed witness the grain. He said that he had 2000 bushels of oats and over, and did not owe anything for them. After tea, and the cattle had been put up, Skiff was in the field looking at them. Witness requested him to look over the cattle and make him an offer for them. He looked them over, and asked witness to set a price that he would take for them. Witness set his price and Skiff told him that he could not take them at that price. They soon agreed upon a price. At the price agreed upon the cattle came to $600. Before they agreed upon the price, Skiff said that he had not the money and wished to give the witness what he called a good bank note. He said the witness could get the money on the note if he wanted to use it. Witness told him that he supposed he could; he presumed they could deal as he had shown up pretty well. Skiff said his circumstances were as he had stated; he always paid his notes as they became due; that he was pretty much out of debt; that the home farm

was unincumbered, and the Van Schaack farm was nearly paid for; that he was out of debt except a balance on the Van Schaack farm. Skiff did not say how much was due on the Van Schaack farm. He did not give a note at the time the cattle were weighed; the next day Hale went with the defendant to Troy; they went into Harrington's office in Troy, when Skiff made a note for $600, payable to Hale's order; Hale said it was not as he expected, it should have been to some one else's order; Hale took the note.

The District Attorney then asked the witness if the note had been paid? The defendant's counsel objected that it was not alleged in the indictment that the note was not paid. The court overruled the objection, and the defendant's counsel excepted.

The witness further testified that the note was dated 20th September, 1850, payable three months from date; it was not paid; it was payable at a bank in Troy; witness got it discounted at Whitehall, and when it became due paid it; two weeks after the giving of the note had a conversation with Skiff; witness had then heard that he had failed; he asked him if he had made arrangements to pay the note when it became due; he said no, he did not expect to pay a shilling of it; witness asked him why he had deceived him in such a way? he said he had been carrying a heavy load for several years and he had to throw it off on to other people's shoulders; he said his property was all mortgaged, he owed a great deal more than he could pay; the witness says that the representations which he made of his circumstances, induced him to let him have the cattle; he should not have let him have the cattle except for these representations; witness inquired of no person whether Skiff's lands were unincumbered; he made no searches to see if he owned the lands, nor any searches for chattel mortgages; knew Skiff and had sold him cattle at other times, and up to the time of making the bargain had never heard his circumstances spoken against.

It was then proved that after Skiff's failure, which must have been soon after the cattle trade with Hale, he was examined in

relation to his debts and assets. He stated his debts to amount to $26,215, and his assets $13,365; also that for two years he had known that he was not able to pay his debts. Skiff further stated that for a portion of the land he had nothing but a verbal contract; there were 92 acres of the whole, 7 acres of which he bought at $40 per acre, and had a deed for it, for the balance he had only a parol agreement with Van Schaack. He had paid Van Schaack $200 or $300, and had made $400 or $500 worth of improvements on the place. The cost price of place was $26,000.

It was further proved that about the time of his failure, Skiff showed to a witness notes to the amount of $2·250, on which he had been an endorser, and said he had all that money to pay; that this brought him to where he was now; that he had known for five years that he could not pay his debts, with that load on his shoulders; that he had tried to get released from the notes. He was asked why he did not give up before; he replied because he hated to make a muss.

This was the substance of the testimony on the part of the people, at the close of which, the counsel for the defendant moved to quash the indictment on the grounds: 1st. That the indictment does not allege a sale from Hale to Skiff, or any other bargain, or any other means by which the property was transferred from one to the other: 2d. It does not allege that Hale parted with his property at all: 3d. It does not allege that he did so in whole or in part, in consequence of these representations: 4th. It does not allege any sale from Hale to Skiff on credit: 5th. It does not allege that Skiff has not paid for the property: 6th. It does not allege that he has refused to pay: 7th. It does not allege that any pay day has arrived: 8th. That it does not falsify all the pretences, nor does it properly allege the falsity of those attempted to be falsified: 9th. The defendant's counsel renewed the objections already specified in objecting to the evidence under the indictment. The court refused to quash the indictment on either or all of said grounds, and defendant's counsel excepted to such refusal.

The defendant's counsel then moved for the discharge of the

defendant upon the evidence on the following grounds: 1st. Because by the evidence it appeared that Hale parted with his property under the understanding on his part, that he was to receive a good endorsed note, and not on the faith of the representations made by Skiff. 2d. That Hale had not shown ordinary diligence on his part to ascertain defendant's circumstances, although it was proven that he had abundant means within his power to ascertain the same. 3d. That the Court of Sessions had no jurisdiction to try the cause, as the property in the cattle remained in Hale, until the note for the purchase money was received by him of the defendant in the city of Troy. And that even the possession of the property was not changed, the cattle remaining in the same lot, and that the defendant could only be tried in the county of Rensselaer, where the offence if any, had been committed. The court, as to the several grounds of the motion for the discharge of the defendant upon the evidence, held, that the question raised involved matters of fact for the consideration of the jury under the charge of the court, and that the defendant's motion to be discharged was denied, to which decision and refusal the defendant's counsel excepted.

The jury found the defendant guilty, and the court imposed on him a fine of $250, and to stand committed until the same be paid.

*C. R. Ingalls*, for plaintiff in error.

*J. Potter*, (District Attorney,) for defendants in error.

*By the Court*, WRIGHT, J.—The first objection is, to the sufficiency of the indictment: the second to the proof sustaining it. Under these two general objections, we are to consider the case.

1. As to the indictment. It alleges that the defendant, with the intent to cheat and defraud one Samuel Hale, made certain false pretences, which pretences are set forth with particularity in the pleading; that Hale, believing such false pretences and representations, was induced by reason of them to deliver, and

Skiff v. The People.

did then and there deliver to the defendant, thirty-nine head of cattle, of the value of $600, of the property of Hale; and the defendant did designedly receive and obtain the cattle by means of the false pretences, and with intent to cheat and defraud Hale. The pleading charges in the language of the statute, that the defendant with intent, &c., did obtain from Hale, certain personal property, &c. That Hale was induced by the false pretences to deliver, and did deliver to the defendant, and that the defendant did receive and obtain, certain cattle. It does not, however, in terms allege a sale of the cattle from Hale to Skiff, or any other bargain, by which the property was transferred from the one to the other; and accordingly when the public prosecutor proposed to show a bargain and sale of the cattle, by which they were transferred, the defendant objected, on the ground that no bargain and sale were alleged in the indictment. We are of the opinion that the indictment is not defective in this respect. It sufficiently alleges the facts constituting the crime. The offence consists in obtaining the property, whether this be through a sale or bailment, or in any other way. The fact is specifically alleged that the cattle were delivered to, and obtained by the defendant by means of the false pretences, that is, that they were transferred to him. And under this allegation, evidence of the manner of the transfer was admissible.

Another objection taken to the proof of any bargain and sale of the cattle, was that the property and its location was insufficiently described in the indictment to admit of any proof thereof. From the indistinctness of this objection, it is a little difficult to say what property is alluded to. But the counsel for the defendant tells us that he referred to the two pieces of land which Skiff, as the pleading alleges, pretended to own. The indictment charges the pretence of owning two pieces of land in the town of Easton, in the county of Washington, designating them as the Home farm or place, and the Van Schaack farm. This description seems to us to be sufficiently definite. It is unlike the case of *The People* v. *Lord*, (9 *Barbour*, 675,)

where the indictment described the lands generally to be in the state of Texas.

Hale parted with his property on credit. It was part of the agreement by which Skiff obtained the cattle, that he was to give a note payable at a bank, on which Hale could get the money. On the trial, the district attorney asked the witness if the note was paid; to this question the defendant's counsel objected, on the ground that it was not alleged in the indictment that the note was not paid. The court overruled the objection, and the defendant's counsel excepted. There was no error in this. It was no reason for rejecting the inquiry, that the fact of non-payment had not been alleged in the indictment. Had the objection been that the offence charged required no proof of the nonpayment of the note to make it complete, and consequently such proof was immaterial, there might have been more force in it. But then we could hardly have come to the conclusion that it was wholly irrelevant. It tended at least slightly, in connection with other proof in the case, to characterize the *quo animo* of the transaction on the part of the defendant.

There is nothing in the objection that the indictment does not falsify all the pretences. It is not necessary to negative all the pretences in the indictment, or to prove all that are negatived to be false. (9 *Wend.* 182; 11 *Wend.* 557.)

2. As to the sufficiency of the proof. At the close of the testimony, the defendant's counsel moved for his discharge, for the reasons, 1st. That by the evidence it appeared that Hale parted with his property under the understanding, on his part, that he was to receive a good endorsed note, and not on the faith of the representations made by Skiff. 2d. That Hale had not shown ordinary diligence to ascertain the defendant's circumstances, although it was proved that he had abundant means within his power to ascertain the same. 3d. That the Court of Sessions had not jurisdiction to try the cause; and that it could only be tried in the county of Rensselaer, where the offence, if any, had been committed. The court denied the motion for discharge, holding that the questions raised involved matters of fact for the consideration of the jury.

Skiff *v.* The People.

If the fact had stood out in the case uncontroverted, that Hale was not influenced in parting with his property by the false pretences and representations of the defendant, but that he relied on an agreement that he was to receive a good indorsed note, the court should have discharged him or at least directed the jury to acquit. But this was not so. Hale expressly testifies that he was induced by the defendant's representations of his solvency, his ability to pay, &c., to let him have the cattle, and that except for such representations being made, he should not have parted with his property.

The case does not show that Hale did not use ordinary prudence and diligence in inquiring into the truth of the pretences. He inquired of Tabor, the landlord, and neighbor of the defendant. But the degree of prudence, and the sufficiency of the pretences to deceive, were questions of fact for the jury, and they have found against the defendant.

I do not think there is any force in the point as to jurisdiction. The transaction took place in the county of Washington. It was there the pretences were made and believed, and the cattle weighed and delivered. The sale was there consummated and possession taken of the property. The waiving, by Hale, of the giving of the note until the parties arrived in Troy, can not have the effect to change the place of making the representations and the delivery of the cattle. It is sufficiently clear from the evidence, that the offence for which the defendant was indicted, was committed in the county of Washington; that there the defendant obtained the property from Hale, and of course the Court of Sessions of that county had jurisdiction.

The judgment of the Court of Sessions of the county of Washington is affirmed.